IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

STEVEN H. SMITH,                )
                                )
      Plaintiff,             )
                                )
v.                              )   Case No. CIV-09-696-D
                                )
MICHAEL J. ASTRUE,              )
COMMISSIONER, SOCIAL            )
SECURITY ADMINISTRATION,        )
                                )
      Defendant.             )

## REPORT AND RECOMMENDATION

The Plaintiff, Steven Smith, has experienced pain in his leg, ankle, and back. He sought disability benefits, and the Social Security Administration denied relief. Mr. Smith seeks reversal based on errors in a treating physician's assessment of functional limitations and the administrative law judge's consideration of pain complaints. The Court should affirm.

I.     Evaluation of the Treating Physician's Opinion

The administrative law judge did not err in his analysis of the treating doctor's opinions.

The pertinent regulations require the administrative law judge to assess a claimant's residual functional capacity based on categories ranging from "sedentary" to "very heavy" work.[1] The lowest category, sedentary work, generally requires a claimant to sit for at least

---

[1] *See* 20 C.F.R. §§ 404.1569a(a), 416.969a(a).

six hours in an eight-hour workday.[2] A treating physician, Dr. Perry Klaassen, issued two form assessments stating that Mr. Smith could not sit for six hours because of his pain.[3] The administrative law judge acknowledged the opinions, but disagreed with them.[4] The Plaintiff contends otherwise[5] and challenges the sufficiency of the evidence for the judge's conclusion, rather than the sufficiency of his explanation.[6] The Court should reject Mr. Smith's argument, as sufficient evidence existed for the administrative law judge to reject Dr. Klaassen's evaluation.

---

[2] *See* Social Security Ruling 96-9p, *Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work - Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*, 1996 WL 374185, Westlaw op. at 3 (July 2, 1996) (stating that for sedentary work, "[s]itting would generally total about 6 hours of an 8-hour workday").

[3] Administrative Record at pp. 186, 201 (Aug. 19, 2009) ("Administrative Record").

[4] Administrative Record at p. 18.

[5] The Plaintiff identifies the requirements for sedentary work, but does not identify the ones that would not have been met if the administrative law judge had adhered to the treating physician's opinions. *See* Opening Brief at pp. 6-9 (Oct. 26, 2009). Elsewhere in the brief, however, the Plaintiff appears to focus on the inability to sit for six hours because of his pain:

> Because of pain and its impact upon activity Ms. [sic] Smith does not have the residual functional capacity to perform full time work. Sedentary work requires up to six hours of sitting. Here, Mr. Smith does not have this ability and all work is eliminated.

*Id*. at p. 13.

[6] *See, e.g.*, Opening Brief at p. 6 (Oct. 26, 2009) ("Mr. Smith objects [to dismissal of the treating physician's opinion] as there is ample evidence."); *id*. at p. 8 ("Plaintiff argues that the treating physicians [sic] statement is entitled to substantial weight as it is supported by substantial evidence of record.").

2

The evidence is sufficient if it might be accepted for a conclusion by a person with a reasonable mind.[7] The quantum of required evidence lies somewhere between a scintilla and preponderance.[8] In applying this test, the Court cannot weigh the evidence.[9]

The administrative law judge relied on six aspects of the administrative record when he determined that Dr. Klaassen had overstated the length of time that Mr. Smith could sit:

- results of physical examinations showing good strength, motor functions, reflexes, and sensory functions in the spine and lower extremities;

- absence of a marked limitation in spine mobility;

- lack of deficits in the upper extremities;

- absence of complications from a right leg fracture with respect to pain or swelling;

- absence of marked problems involving falls or the inability to independently move about because of poor balance or gait; and

- evidence of effective pain relief from the use of Tylenol and Lortab and a single trigger point block injection in December 1994.[10]

The administrative law judge acted reasonably in relying on the six evidentiary points.

For example, numerous medical professionals noted good range of motion and sensory and motor functioning. In 2002 and 2004, a physician's assistant reported that the "sensation

---

[7] *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).

[8] *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[9] *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).

[10] Administrative Record at p. 18.

[was] intact" and that good range of motion existed in the extremities.[11] On three occasions doctors examined Mr. Smith and assessed his motor strength as "5/5,"[12] which would indicate insignificant motor loss.[13] In November 2004, Dr. Jennifer Holmes reported that the range of motion and sensory loss were within normal limits.[14]

The evidence of normal reflexes was also substantial. For example, in a hospital visit, Dr. Glen Bailey reported that Mr. Smith's deep tendon reflexes were "+2/4 bilaterally in the upper and lower extremities."[15] And Doctors David Clifford and Timothy Puckett reported normal reflexes.[16] Similarly, Dr. David Hogan characterized the deep tendon reflexes as "symmetric and average in intensity."[17]

---

[11]  Administrative Record at pp. 104, 140.

[12]  Administrative Record at pp. 106, 118, 134.

[13]  *See Torres v. Apfel*, 210 F.3d 385, 2000 WL 61298, Westlaw op. at 2 (9th Cir. Jan. 21, 2000) (unpublished op.) (evidence of "5/5" motor strength adequately supported the administrative law judge's finding that the claimant did not suffer from "significant motor loss with muscle weakness" as required by Listing 1.05(C)); *Buck v. Barnhart*, 238 F. Supp. 2d 1255, 1268 (D. Kan. 2002) (holding that a physician's assessment of "5/5" "motor" function supported the administrative law judge's rejection of a claim under Listing 1.05(C) notwithstanding evidence of muscle weakness).

[14]  Administrative Record at pp. 143, 145-48.

[15]  Administrative Record at p. 113. Darlene Hertling and Dr. Randolph Kessler stated that a reflex score of "+" or "2" was considered "average." Darlene Hertling, BS, RPT & Randolph Kessler, M.D., *Management of Common Musculoskeletal Disorders: Physical Therapy Principles and Methods* 86-87 (4th ed. 2006).

[16]  Administrative Record at p. 118.

[17]  Administrative Record at p. 134.

Substantial evidence also existed to support the administrative law judge's reliance on a normal gait. For example, in 2004, Dr. Rhett Jackson found that the gait was normal and Dr. Jennifer Holmes stated that Mr. Smith had "ambulate[d] with a safe, stable gait at an appropriate speed without use of assistive devices."[18]

Finally, the record contains substantial evidence supporting the administrative law judge's conclusion that the Lortab, Tylenol, and trigger point injection were effectively controlling the pain.

For example, Dr. Klaassen - who authored the two functional assessments in question - stated:

- "Lortab allows [Mr. Smith] to get comfortable enough to where he can sleep at night and it allows him to carry on his daily activities because the pain is controlled;"[19]

- Mr. Smith had acknowledged pain relief with his medication to the point that he could sleep, "get around," and "be more active;"[20] and

- Lortab makes the pain "tolerable" and improves Mr. Smith's function.[21]

Dr. Klaassen's records led the agency's medical expert to acknowledge the existence of pain relief "with the Lortabs."[22]

---

[18] Administrative Record at pp. 104, 143.

[19] Administrative Record at p. 189.

[20] Administrative Record at pp. 190-91.

[21] Administrative Record at pp. 192, 194-95.

[22] Administrative Record at p. 236.

Evidence also existed to support the administrative law judge's conclusion that the pain was reduced as a result of the trigger point injection. Shortly after administering the injection, Dr. Badie Mansour reported:

> On December 20, 2004, a trigger point block of the right gluteus medius muscle was done with Marcaine 0.25%, total amount 5 cc. He expressed that his low back pain totally disappeared after the block. Even the radiating pain to his right calf has improved. He was able to sit, stand, and walk without any discomfort. He was able to hyperextend his back without any discomfort. There were no obvious complications from the procedure.[23]

In combination, the evidence provided a substantial basis for the administrative law judge to find an ability to sit for six hours in a typical work-day with the benefit of a sit-stand option. As a result, the Court cannot disturb the administrative law judge's finding that Dr. Klaassen had overstated the sitting limitation.

II.     Evaluation of Mr. Smith's Pain Complaints

Mr. Smith also challenges the judge's credibility findings. This challenge is also invalid.

At the hearing, Mr. Smith was asked "how much sitting" he could tolerate.[24] He answered:

> 30 minutes maybe to an hour maybe. I don't even know whether I can make it an hour. Like I say, I shift back and forth. I go from sitting to laying to, to standing and, and I shift back and forth and that's how I, I even really basically keep from laying all the time is because I have to change positions and when I'm sitting I can't stand in one position all the time. And to, I can

---

[23]     Administrative Record at p. 198.

[24]     Administrative Record at p. 245.

only do it so long and then I'm suffering and then I have to lay down flat to let the pressure go away from my back to where I can't stand the pain.[25]

In part of the decision, the judge stated:

> After careful consideration of all the evidence, the Administrative Law Judge concludes that the claimant's testimony and statements of the disabling nature of his health impairments since February 1, 2003, are not credible.[26]

Mr. Smith criticizes this statement on grounds that: (1) it failed to identify the parts of the testimony that were deemed unworthy of belief; and (2) it failed to include an analysis of the factors bearing on credibility. Both criticisms are invalid.

The "possible factors" bearing on credibility include:

- the levels of medication and their effectiveness,

- the extent of the attempts to obtain relief,

- the frequency of medical contacts,

- the nature of daily activities,

- subjective measures of credibility that are peculiarly within the decision-maker's judgment, and

- the consistency or compatibility of nonmedical testimony with objective medical evidence.[27]

The Court may assume in the abstract that the administrative law judge had a duty to identify the parts of the testimony that he did not believe. In this case, however, the

---

[25] Administrative Record at p. 246.

[26] Administrative Record at pp. 18-19.

[27] *Huston v. Bowen*, 838 F.2d 1125, 1132-33 (10th Cir. 1988) (citation & footnote omitted).

assumption would have little bearing. In his application and at the hearing, Mr. Smith attributed all of his physical limitations to pain in his lower back and right hip.[28] Thus, when the administrative law judge referred to the complaints, he had to be referring to the testimony involving back and hip pain. There was no other subjective testimony to discuss.[29]

The judge ultimately found an ability to sit for six hours in a typical work-day.[30] The Plaintiff criticizes the finding based on his own testimony involving pain complaints. Thus, the relevant inquiry is whether the administrative law judge adequately discussed his reasons when he found Mr. Smith able to sit roughly six hours in a typical work-day. One might agree or disagree with the judge's balancing of the evidence to reach this conclusion. But the decisive question is whether the administrative law judge adequately stated his reasoning. The Court should answer in the affirmative.

As noted above, six possible factors bear on the credibility assessment.[31] But the administrative law judge need not discuss all of the factors in every case.[32]

---

[28] Administrative Record at pp. 87, 240-41, 246.

[29] *See Cobb v. Astrue*, 2010 WL 381614, Westlaw op. at 4 (10th Cir. Feb. 4, 2010) (unpublished op.) ("we agree with the district court that the [administrative law judge's] credibility finding was summary, but taking the decision as a whole, it is clear enough what portions of [the claimant's] testimony he credited and what portions he did not, and why" (citation omitted)).

[30] *See supra* p. 2.

[31] *See supra* p. 7.

[32] *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (stating that in the assessment of credibility, the administrative law judge need not provide "a formalistic factor-by-factor recitation of the evidence").

Ultimately, the administrative law judge had a duty to articulate a rationale that would allow meaningful judicial review.[33] The judge clearly satisfied this duty because he obviously discounted the pain complaints based on the medical evidence involving normal reflexes, good strength, adequate motor function, adequate sensory function in the spine and lower extremities, lack of deficits in the upper extremities, absence of complications from a leg fracture, absence of marked problems involving falls, existence of a normal gait, and relief from the trigger-point injection and pain medication.[34] As noted above, the record contained substantial evidence for the administrative law judge's assessment.[35] In these circumstances, the Court should uphold the administrative law judge's credibility findings.

III. Notice of the Right to Object

The parties enjoy the right to object to the present report.[36] Any objection must be filed with the Court Clerk for the United States District Court[37] by March 15, 2010.[38] The

---

[33] *See* Social Security Ruling 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, 1996 WL 374186, Westlaw op. at 4 (July 2, 1996) (stating that the decision on credibility must "contain specific reasons" and "be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight"); *see also Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (stating that the credibility explanation is sufficient if the administrative law judge "sets forth the specific evidence he relies on").

[34] *See supra* p. 3.

[35] *See supra* pp. 3-6.

[36] *See* 28 U.S.C. § 636(b)(1).

[37] *See Haney v. Addison*, 175 F.3d 1217, 1219-20 (10th Cir. 1999).

[38] *See* Fed. R. Civ. P. 6(d), 72(b)(2); 28 U.S.C. § 636(b)(1).

failure to timely object to this report and recommendation would constitute a waiver of the right to appellate review.[39]

IV. Status of the Referral

The referral is discharged with the present report.

Entered this 26th day of February, 2010.

*Robert E. Bacharach*
Robert E. Bacharach
United States Magistrate Judge

---

[39] *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).